**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | \* | |
| | \* | CRIMINAL NO. 2:16-CR-00378-DCN |
| v. | \* | |
| **MICHAEL SLAGER** | \* | |
| | \* \* \* | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS ON THE BASIS OF OUTRAGEOUS GOVERNMENTAL CONDUCT**

Defendant Michael Slager seeks to suppress the Mirandized statement he gave to the South Carolina Law Enforcement Division on April 7, 2015. ECF No. 54. For the reasons stated below, the Court should deny the motion.

**I.    BACKGROUND**

On April 4, 2015, the defendant, then a police officer with the North Charleston Police Department ("NCPD") shot and killed Walter Scott after a traffic stop. A bystander captured the shooting on his cell phone video.

Following the shooting, the South Carolina Law Enforcement Division ("SLED") opened an investigation. The SLED investigation was led by Agent Angela Peterson. Before it knew about the bystander video, SLED attempted to interview the defendant regarding the shooting. Agent Peterson coordinated the interview with the defendant's then-attorney, David Aylor. Mr. Aylor chose the time and place of the interview, which took place on April 7, 2015, at Mr. Aylor's law office.

On the evening before the interview, SLED received the bystander cell phone video that showed the defendant shooting Mr. Scott as he was running away. The following day, SLED

1

Agent Peterson and Lieutenant Charles Ghent arrived at Mr. Aylor's law office at around 11 a.m. as planned. Before the interview began, Mr. Aylor asked the investigators about the evidence SLED had collected. Agent Peterson was intentionally vague in response to Mr. Aylor's questions and did not acknowledge the existence of the video in SLED's possession.

Present during the interview of the defendant were his attorney, Mr. Aylor, defense investigator Levi Miles, and both SLED agents. Prior to the interview, the defendant signed a waiver of his *Miranda* rights and gave a consensual DNA sample. Over the next approximately hour and forty minutes, the defendant provided a detailed statement of his interaction with Mr. Scott. The defendant described pulling over Mr. Scott for a broken tail light. During the stop, Mr. Scott ran away, and the defendant followed after him on foot. The defendant said that he used his Taser on Mr. Scott, temporarily incapacitating him. The defendant stated that a struggle ensued on the ground, during which Mr. Scott gained full control of the defendant's Taser, stood up, and pointed the Taser directly at the defendant with both hands. The defendant claimed that he shot Mr. Scott in self-defense as Mr. Scott moved towards him. During the interview, the defendant acted out his interaction with Mr. Scott, with defense investigator Miles playing the part of Mr. Scott. The defendant stated that Mr. Scott dropped the Taser somewhere between where the defendant fired his weapon and where Mr. Scott ultimately fell. At the conclusion of the interview, SLED investigators gave the defendant an opportunity to review his statement and make appropriate corrections or additions. Mr. Aylor indicated that he had another meeting scheduled, so the morning interview concluded with SLED planning to return later in the afternoon to receive a final written statement from the defendant.

When the investigators returned to Mr. Aylor's office at around 4 p.m., they showed the video to the defendant and his attorney. After reviewing the video several more times, the

defendant and Mr. Aylor left the room. When they returned, Mr. Aylor stated that he did not think his representation of the defendant would continue. SLED investigators then arrested the defendant and took him into custody.

## II. ARGUMENT

In his motion, the defendant argues that the statement he made to SLED investigators on April 7, 2015, should be suppressed because the government engaged in "outrageous conduct" by not informing the defendant or Mr. Aylor of the existence of a videotape. The defendant argues that the failure to inform the defendant or his counsel of the existence of a videotape deprived him of his due process right to be free from self-incrimination by involuntary statement, and also deprived him of his right to effective counsel.

### A. The Defendant's Statement to SLED Was Voluntary.

The defendant gave a voluntary statement to SLED after receiving *Miranda* warnings, in the presence of his attorney, and in a non-custodial setting. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (defining custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way"); *United States v. Hashime*, 734 F.3d 278, 283 (4th Cir. 2013) ("Facts relevant to the custodial inquiry include, but are not limited to, the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, [and] the potential display of a weapon by the officer"). The defendant and his counsel chose the time and place of the interview.[1] There is no evidence that suggests the defendant was coerced in any way to give a statement. *See United States v. Braxton*, 112 F.3d

---

[1] The fact that Mr. Aylor's office is coincidentally near the Charleston County Detention Center is of no significance as he chose the location of the interview

3

777, 780 (4th Cir. 1997) ("[C]oercive police activity is a necessary predicate to the finding that a confession is not voluntary within the meaning of the Due Process Clause.") Even though the defendant was not in custody, he received *Miranda* warnings. The defendant acknowledged at the time of the interview that he was not required to make a statement, but if he did, the statement could be used against him. The defendant voluntarily provided a DNA sample, which he has never claimed was involuntary or otherwise coerced. The defendant was free to end the interview at any time, and in fact, the defendant and his attorney ended the interview before the defendant made a formal written statement, and then the defendant freely left the location. *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (holding that the key question is whether "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave."). Considering these facts and circumstances, there is no reason to believe that the defendant's statement was involuntary.

### B. The Failure to Inform the Defendant of the Video Did Not Make the Statement Involuntary

The defendant makes no claim that he – an experienced police officer who had himself given *Miranda* warnings to others – did not understand the *Miranda* warning he was given or that he failed to appreciate the consequences of waiving those rights. Instead, the defendant argues that his otherwise voluntary statement was somehow made involuntary because the SLED agent did not advise him of the existence of the bystander video. The crux of the defendant's argument is that had he known about the existence of the video, he would not have given a false statement to SLED. ECF No. 54 at 5.

As the Fourth Circuit has noted, "Misrepresentations [by investigators] are insufficient, in and of themselves, to render a confession involuntary." *United States v. Whitfield*, 695 F.3d 288, 302 (4th Cir. 2012) (internal citation omitted.) Whether an agent withheld information is only

4

"relevant to the constitutional validity of a waiver if it deprives a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Moran v. Burbine*, 475 U.S. 412, 422 (1986). As the Court noted in *Moran*,

> Events occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right…. No doubt the additional information would have been useful to [the suspect]; perhaps even it might have affected his decision to [give a statement]. But we have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights.

*Id.* at 421. The decision not to inform the defendant of the cell phone video evidence had no bearing on the defendant's ability to understand his rights and the consequences of abandoning those rights and thus had no bearing on the voluntariness of the defendant's statement.

Contrary to the defendant's assertion, SLED's strategic decision to withhold information from the defendant does not "shock the conscience" or constitute outrageous conduct. ECF No. 54 at 5-6. As the defendant concedes in his memorandum, the Fourth Circuit has recognized a high bar for determining "outrageous conduct," and will not find a due process violation where the conduct "was neither shocking nor offensive to traditional notions of fundamental fairness." *See United States v. Goodwin*, 854 F.2d 33, 37 (4th Cir. 1988). The statements by the SLED agents are neither shocking, nor offensive to the norms of fundamental fairness. In fact, they are consistent with law enforcement practice across the country. Even outright lies by law enforcement agents do not make otherwise voluntary statements inadmissible. *See Frazier v. Cupp*, 394 U.S. 731 (1969) (holding that defendant's statement was admissible even though police officers' falsely informed the suspect that his codefendant had already confessed to the crime); *Oregon v. Mathiason*, 429 U.S. 492 (1997) (holding that a statement was admissible even though a police officer falsely told the suspect that his fingerprints were found at the scene). And while

5

these cases involve situations in which the police exaggerated the strength of the evidence against the subject, courts have reached the same result in cases where the police led the suspect to believe that he was not a target of a criminal investigation. *See United States v. Farley*, 607 F.3d 1294, 1329-30 (11th Cir.2010) (permissible for agents to tell defendant they were investigating terrorism offense when they were really investigating him for sex offense); *United States v. Boskic*, 545 F.3d 69, 80 (1st Cir. 2008) (defendant was led to believe that the investigation was not criminal; "that deception alone did not make his statements involuntary"); *United States v. Byram*, 145 F.3d 405, 408-409 (1st Cir. 1998) (absent coercion, false representations about a subject's target status neither render the statements involuntary nor shock the conscience). In this case, even if the Court were to accept the defendant's characterization of SLED investigators "lying to and deceiving the attorney that agents knew represented the target of the investigation," *see* ECF No. 54 at 6, it is well settled that law enforcement has significant leeway in questioning a suspect. That leeway allows for making misrepresentations, which encompasses SLED's strategic decision not to inform the defendant about the existence of the video evidence. This case law makes it clear that SLED did not engage in misconduct, and there is no basis for suppressing the defendant's statements.

Under the circumstances here, the agents merely did not inform the defendant and his attorney of a piece of evidence that they had gathered against him. This is a valid and completely lawful interrogation tactic – one that is routinely and properly used by law enforcement. The fact that the defendant was unaware that a bystander had recorded a portion of the shooting on his cell phone has no bearing on whether his statement was voluntary. This is true, even if the defendant may have made a different decision had he been aware of the video prior to making a statement. The fact is, the defendant knew what really happened on April 4, 2015, and the defendant

voluntarily chose to tell a false exculpatory story to the agents with the intent to avoid responsibility for his actions. The fact that his strategy would ultimately fail because his story was flatly contradicted by a video of the shooting does not make his statement any less voluntary.

### C. During a Pre-Indictment Interview, The Defendant Did Not Have A Sixth Amendment Right to Counsel.

The defendant claims that because his attorney was allegedly misled by SLED agents, the defendant received bad legal advice that resulted in the ineffective assistance of counsel. *See* ECF No. 54 at 8. The defendant's assertion is without merit. The Sixth Amendment right to counsel does not attach until "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 688 (1972). Accordingly, the Sixth Amendment does not apply to pre-charge questioning; this is true even if the suspect has been arrested, *United States v. Gouveia*, 467 U.S. 180, 190 (1980), or has an attorney on other charges and is the focus of a government investigation. *See United States v. Medunjanin*, 752 F.3d 576, 588 (2d Cir. 2014) (Sixth Amendment right to counsel did not apply to a suspect who was arrested and hired an attorney); *United States v. Hornsby*, 666 F.3d 296, 310 (4th Cir. 2012) (although the defendant's attorney had sent the government a letter inquiring about the investigation, the defendant's Sixth Amendment rights were not violated by interrogation because judicial proceedings had not been initiated); *United States v. Hayes,* 231 F.3d 663 (9th Cir. 2000) (Sixth Amendment right to counsel had not attached, even though the defendant had received a "target letter," counsel had been appointed, and a court order to depose witnesses had been obtained). At the time of the interview between SLED investigators and the defendant, neither the state nor the federal government had initiated judicial criminal proceedings against the defendant. Therefore, his Sixth Amendment right to counsel had yet to attach.

### D. The Defendant Cannot Make Out An Ineffective Assistance Claim for Counsel Received in Connection with a Pre-Indictment Interview.

An ineffective assistance of counsel claim arises only from the Sixth Amendment's right to counsel. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Absent a Sixth Amendment right to counsel, there can be no deprivation of effective assistance of counsel. *See Wainwright v. Torna*, 455 U.S. 586, 587 (1982) (holding that a petitioner had no constitutional right to counsel during his pursuit of discretionary review by the Florida Supreme Court and thus could not be deprived of effective assistance of counsel); *United States v. Waldon*, 363 F.3d 1103, 1112 n. 3 (11th Cir. 2004) ("reject[ing] out of hand" ineffective-assistance claim by defendant subpoenaed to testify before grand jury prior to indictment, even if he was a "target" of the investigation); *United States v. Gambone*, 2000 WL 1367603 (E.D. Pa. Sep. 21, 2000) ("The two-part [ineffective assistance] analysis, however, is unnecessary if the defendant's right to counsel has not attached", citing *In re Grand Jury Subpoena, No. 00–1622*, 223 F.3d 213, 220 (3d Cir. 2000)(same)).

While the Fourth Circuit has yet to consider whether an ineffective assistance of counsel claim might be raised prior to the attachment of the Sixth Amendment right to counsel, other circuits have considered this issue and foreclosed the possibility. In *United States v. Alvarez*, 142 F.3d 1243, 1249-50 (10th Cir. 1998), a defendant claimed that his decision to give a statement to police was based, in part, on ineffective counsel. The Tenth Circuit found that this statement was given before the government had initiated formal proceedings and, therefore, the Sixth Amendment right to counsel had yet to attach. Absent the attachment of the right to counsel, the court held that a defendant cannot argue that his attorney's performance "fell short of the Sixth Amendment's requirements." *Id.* at 1250. Similarly, in *United States v. Moody*, 206 F.3d 609, 615 (6th Cir. 2000), a defendant argued that he suffered from ineffective counsel during pre-indictment plea negotiations. Even after the Sixth Circuit acknowledged that it was perhaps a "mere formality"

8

that the defendant had not yet been indicted, it rejected his ineffective assistance of counsel claim. *Id.* at 616. Therefore, the defendant's attempt to suppress his statement to SLED on the basis of ineffective assistance of counsel must fail, too, because his Sixth Amendment right to counsel had yet to attach at the time of the interview.

### E. The Defendant Does Not Have a Fifth or Fourteenth Amendment Right to Counsel in a Non-Custodial Setting.

Finally, the Court should reject the defendant's request that it break with the weight of authority to recognize a Fifth or Fourteenth Amendment right to counsel in a non-custodial setting. Offering only two state court decisions from Hawaii and Massachusetts as authority, the defendant asks the Court to conclude that his claimed ineffective counsel created an "uninformed [*Miranda* waiver] in violation of the Fifth and Fourteen Amendments of the United States Constitution." ECF No. 54 at 9. The first of these authorities, *State v. Joseph*, 109 Haw. 482, 499, 128 P.3d 795, 812 (2006), never reached the issue of whether a defendant's right to counsel had attached but instead decided the case on other grounds. The second state case, *Com. v. Celester*, 473 Mass. 553, 574, 45 N.E.3d 539, 557 (2016), did recognize that an ineffective assistance of counsel claim could arise from the Fifth Amendment; however, the court explicitly limited its discussion to the context of "custodial interrogation." *Id.* Even this lone state court authority is inapplicable to the instant case, in which the defendant provided a statement in a non-custodial setting. The Court, accordingly, should reject the defendant's request that it create a Fifth or Fourteenth Amendment right to counsel.

9

### III. CONCLUSION

Based on the foregoing, the government requests that the Court deny Defendant's motion.

                      Respectfully submitted,

                      BETH DRAKE
                      UNITED STATES ATTORNEY

By: *s/ Eric Klumb*
     Eric Klumb (#01671)
     Assistant United States Attorney
     151 Meeting Street, Suite 200
     Charleston, South Carolina 29401-2238
     Telephone: 843-266-1678
     Email: eklumb@usa.doj.gov

     *s/ Jared Fishman*
     Jared Fishman
     Special Litigation Counsel
     Civil Rights Division, Criminal Section
     U.S. Department of Justice
     601 D Street, NW, 5th Floor Washington, DC  20530
     Telephone: (202) 598-1877
     Fax: (202) 514-8336
     Jared.Fishman2@usdoj.gov
     Maryland Bar No. 04-1214-0250