UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | CRIMINAL NO. 2:16-CR-00378-DCN |
| **MICHAEL SLAGER** | * | |
| * * * | | |

**GOVERNMENT'S SUPPLEMENTAL RESPONSE TO DEFENDANT'S
MOTION TO DISCLOSE WITNESS HISTORY AND INCENTIVES**

On February 10, 2017, the defendant filed a motion to disclose information about potential witnesses in the trial of this case. ECF No. 60. The government filed its response on February 24, 2017. ECF No. 70. The motion is set to be heard April 21, 2017.

In anticipation of the hearing, the defendant issued a subpoena to Ninth Judicial Circuit Solicitor Scarlett Wilson, seeking the production of the following materials:

1. All documents, electronic or hard copy, of any notes, emails or other methods of communication, summaries, letters, memoranda, or any other type of recording (including electronic communications) regarding contacts with Agents of the South Carolina Law Enforcement Division or any other State, Federal or local law enforcement agency, regarding the retrieval of the "Santana" video on or about April 6, 2015, and the questioning of Mr. Slager prior to the time that Mr. Slager was served with a warrant for the murder of Walter Scott.

2. All invoices, bills, tickets, contracts, and/or receipts for each expense identified for the witness Feidin Santana listed on RS SAW 3324 along with other supporting documents. Documentation should include any payments made by any party, government or private, that the Solicitor is, or upon due diligence would be, aware of that contributed to Santana's expenses or financial status from April 4, 2015, and each day thereafter until the State charge contained in Indictment Number 2015-GS-10-03466 is resolved.

3. All documents, electronic or hard copy, of any notes, emails or other methods of communication, summaries, letters, memoranda, or any other type of recording (including electronic communications) regarding false or misleading testimony

1

>provided by employees of the South Carolina Law Enforcement Division in the State trial of Michael Slager.

Charleston County received a subpoena requesting materials similar to the second category above. SLED personnel also received subpoenas requesting materials that generally would have fallen into the first and third categories, but relating to a specific former SLED employee.

The government believes that the production of these materials is a discovery issue and not the proper target of a subpoena. This brief memorandum is submitted in support of that position.

## Analysis

Subpoenas *duces tecum* are governed by Rule 17(c) of the Federal Rules of Criminal Procedure. "Rule 17(c) is not intended to provide a means of pretrial discovery; rather, its primary purpose is simply to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *United States v. Rand*, 835 F.3d 451, 462 (4th Cir. 2016) (quoting *United States v. Nixon*, 418 U.S. 683, 689–99 (1974) (internal quotations omitted). *See also, Bowman Dairy v. United States*, 341 U.S. 214, 220 (1951) ("Rule 17(c) was not intended to provide an additional means of discovery."). In *Nixon*, the Supreme Court held that the requesting party bears the burden of showing

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

418 U.S. at 699–700 (footnote omitted). The *Nixon* prerequisites typically do not reach impeachment material. "Generally, the need to for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701; *see also United States v.*

*Fields*, 663 F.2d 880, 881 (9th Cir.1981) (reversing a district court's decision not to quash a subpoena where the defendant's only purpose for seeking the Rule 17(c) subpoena was to obtain impeachment materials).  Finally, a "broad request" for documents "based solely on the mere hope that some exculpatory material might turn up" does not justify enforcement of a Rule 17(c) subpoena. *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir.1980).

This does not mean that the defendant is without recourse.  As we have previously acknowledged, the government is obligated to disclose materially favorable information to the defense and will do so even if the information is in the possession of participating law enforcement agencies.  ECF No. 70 at 1.  That obligation belongs in the first instance to the prosecution however.  "In the typical case where a defendant makes only a general request for exculpatory material under *Brady* ..., it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final." *Pennsylvania v. Ritchie*, 480 U.S. 39, 59, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40 (1987); *see also United States v. Gilchrist,* 119 Fed.Appx. 485, 491 (4th Cir. 2005) (per curiam) ("like everything else in the government's file," the prosecutor decides what must be disclosed) (citing *Ritchie*); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988) ("The Court also has made it clear that while the *Brady* rule imposes a general obligation upon the government to disclose evidence that is favorable to the accused and material to guilt or punishment, the government typically is the sole judge of what evidence in its possession is subject to disclosure. If it fails to comply adequately with a discovery order requiring it to disclose *Brady* material, it acts at its own peril.") (citing *Ritchie*).

The proper way to handle these issues, therefore, is not through the issuance of subpoenas *duce tecum*, but instead through the well-established procedures for production of discovery. *See, e.g. United States v. Newby*, 251 F.R.D. 188, 190 (E.D.N.C. 2008) (denying Rule 17(c) subpoena to police department for impeachment information in officers' personnel files in favor of review by the government pursuant to its *Brady/Giglio* obligations).

Against this legal backdrop, each of the defendant's requested categories will be addressed.

1. Communications Regarding Retrieval of the Santana Video

The government will review any such communications during the relevant timeframe and will produce any that are discoverable.

2. Source Documentation Regarding Santana Expense reimbursements

As noted in the government's initial response, payments to witnesses for reimbursement of their travel expenses do not constitute *Giglio* material. ECF No. 70 at 2. Conceivably, there could be some impeachment material there, such as a witness who inflated claims for reimbursement. Accordingly, the government will review the source documentation in order to identify any such material. It should be noted that the State already produced a schedule describing all payments to any witness and the dates to which the payments applied.

3. Materials Regarding False and Misleading Testimony by SLED in the State Trial

This request is simply overbroad. To the extent any such information constitutes *Brady* or *Giglio* material in this case, it will be disclosed. Given the subpoena that went to SLED, however, it may be that this request is intended to cover the circumstances surrounding the deficiencies in the performance of the former SLED lab employee who did the gun shot residue (GSR) analysis. Neither party called that individual to testify in the State case. The defense did

call another SLED analyst who reviewed and confirmed the analysis of the former employee, based upon the data that the former employee had collected. Transcript of the Testimony of Meghan Fletcher, November 21, 2016, at p. 23. The testifying witness did not duplicate or confirm the data set compiled by the former SLED analyst.

In any event, the GSR materials have been submitted for retesting, and once the results are compiled, they will be provided to the defense along with the other information requested in the defendant's subpoena to the SLED lab.

## Conclusion

For the above reasons, the defendant's motion should be denied, with the understanding that the government will be producing discoverable information as represented above and in its previous response.

Respectfully submitted,

BETH DRAKE
UNITED STATES ATTORNEY

By: *s/ Eric Klumb*
Eric Klumb (#01671)
Assistant United States Attorney
151 Meeting Street, Suite 200
Charleston, South Carolina 29401-2238
Telephone: 843-266-1678
Email: eklumb@usa.doj.gov

*s/ Jared Fishman*
JARED FISHMAN
Special Litigation Counsel
Civil Rights Division, Criminal Section
U.S. Department of Justice
601 D Street, NW, 5th Floor
Washington, DC 20530
Telephone: (202) 598-1877
Jared.Fishman2@usdoj.gov
Maryland Bar No. 04-1214-0250