UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | CASE NO. 2:16-CR-00378-DCN |
| **MICHAEL SLAGER** | * | |
| * * * | | |

MOTION IN LIMINE REGARDING
CHARACTER EVIDENCE OF THE DECEDENT VICTIM

The United States, by the undersigned counsel, respectfully moves that, pursuant to Federal Rules of Evidence 403, 404, 405, 608, and 609, this Honorable Court rule in limine to exclude evidence at trial regarding decedent victim Walter Scott's prior arrests, criminal convictions, history of drug and alcohol use, unpaid child support, and other "specific acts of misconduct." As detailed below, the Court should preclude the defendant from making any reference during *voir dire*, opening statements, witness examinations, introduction of evidence, or arguments to the aforementioned "specific acts of misconduct" of Mr. Scott. The specific character evidence is precluded by the Federal Rules of Evidence.

    **I.**    **Background**

During Defendant Slager's state trial, the defense repeatedly elicited, or attempted to elicit – through argument, direct examination, or on cross-examination – evidence related to Walter Scott's character. Specifically, during the state trial, the defense repeatedly referenced: (1) Scott's cocaine use and implied he was a "chronic user of cocaine;" (2) that Scott owed approximately

2

$18,000 in unpaid child support; and (3) that the National Crime Information Center ("NCIC") database listed Scott as "armed and dangerous." The state court, orally ruling *in limine*, excluded testimony related to Scott's criminal convictions and arrests, and the NCIC record. Nonetheless, despite the state court's rulings, the defense repeatedly tried to reference the NCIC entry and made reference to Scott's drug use. Other evidence, referenced below, was admitted without objection by the Solicitor.

The government anticipates that the defense will attempt to introduce similarly improper evidence during the federal trial, and hereby moves this Court to exclude: (1) evidence of Scott's criminal record, including his convictions and arrests; (2) reference to NCIC documentation referring to Scott as "armed and dangerous," as a "wanted person – caution," and as having "violent tendencies;" (3) evidence related to Scott's unpaid child support; (4) evidence relating to Scott's past use of cocaine, marijuana, and alcohol; (5) allegations that Scott improperly took food from a food bank; and (6) the contents of Scott's cellphone. As explained in greater detail below, the Federal Rules of Evidence preclude the introduction of, or any reference to, this information during the federal trial.

### A. Criminal Record

Mr. Scott's criminal record includes the following convictions: (1) a 1991 misdemeanor conviction for possession of a bludgeon, a municipal misdemeanor, for which he paid a fine; (2) a 2008 conviction for driving under a suspended license (non-DUI), a municipal misdemeanor for which he paid a fine; and (3) a 2008 conviction for open container of beer/wine, a municipal misdemeanor for which he paid a fine. Additionally, Scott's criminal history includes arrests for contempt of court (for failing to appear in child support and traffic proceedings), and a 1987 arrest for assault and battery (which was resolved with the 1991 misdemeanor plea).

### B. NCIC Report

At the time of his death, Walter Scott's entry in the NCIC data base included the following designations: "armed and dangerous," "violent tendencies," and a "wanted person – caution." These designations stemmed from Scott's 1991 misdemeanor conviction for possession of a bludgeon, and from an active bench warrant for failure to appear for family court. The evidence presented in the state trial was that the defendant was unaware of Mr. Scott's designations in NCIC. See Testimony of Michael Slager ("Slager Testimony"), November 29, 2016, p. 13.[1] Furthermore, the defendant had not had prior interactions with Mr. Scott, and did not know about Mr. Scott's character. Nonetheless, the defendant testified about these NCIC designations during his testimony at trial, in violation of the state court's *in limine* ruling. Id. at 96. ("I also didn't know he was armed and dangerous and violent tendencies.") During closing argument, defense counsel argued, despite the court's prior ruling, "The FBI put out a bulletin that Mr. Scott was armed and dangerous."[2] Closing Argument, November 30, 2016, p. 43.

### C. Drug Use and Military Discharge

Mr. Scott was an occasional user of cocaine. At the time of his death, Mr. Scott's blood had small amounts of cocaine, cocaethylene (a by-product of cocaine and alcohol), and benzoylecogonine (a cocaine degradation product) in his system, which indicates that Mr. Scott used cocaine and alcohol anywhere from 6 hours to several days before his death.[3] There was no

---

[1] All transcript citations in this motion refer to the draft trial transcript in South Carolina v. Michael Slager, No. 2015A1010201687 (2015). At the time of this writing, final transcripts have not been completed.

[2] A prosecution objection was sustained by the state trial judge.

[3] A defense expert testified that Scott ingested cocaine between 6 and 12 hours before his death. See Testimony of Dr. Thomas Owens, November 22, 2016, p. 71. Dr. Owens testified that there was no way of telling the amount of cocaine used, how it was ingested, or how many times it was ingested. Id. The state presented testimony that there was no way of telling when the cocaine was ingested, suggesting that it could have been ingested "hours to several days" before his death. Testimony of Dr. Demetra Garvin, November 9, 2016, p. 166.

evidence elicited at trial that Scott was under the influence of cocaine at the time of his death. State Court's Oral Ruling, November 22, 2016, p. 68 ("There's no evidence in the record that Mr. Scott was under the influence of cocaine at the time of the arrest."); Testimony of Dr. Thomas Owens, November 22, 2016, at p. 55 (acknowledging that the evidence is insufficient to determine whether Scott was under the influence of cocaine at the time of his death.)

Nonetheless, throughout the state trial, the defendant repeatedly referenced Scott's drug use, and implied that Scott was a "chronic user" of cocaine, even while proffering evidence that there was no proof of that Scott was "chronic user" of cocaine. See Testimony of Dr. Thomas Owens, November 22, 2016, ("Owens Testimony"), at p. 65 ("I cannot make that determination [that Scott was a chronic user of cocaine] from the evidence that was collected."). See also Testimony of Marie Lee Tormos, November 9, 2016 ("Tormos Testimony"), at p. 138-139; State Court Ruling, November 9, 2016, p. 150 (excluding further reference to "chronic" user of cocaine). The defendant similarly tried to introduce evidence of "excited delirium," even though there was no evidence in support of that theory. Owens Testimony, at p. 60. The state court excluded all evidence related to "excited delirium." [4]  See Court Ruling, November 22, 2016, p. 68.

Finally, Mr. Scott received a general discharge from the military, because of marijuana usage. Similarly, after an accident at his work, Mr. Scott tested positive on November 14, 2014 for cocaine. The test was conducted by his employer. Reference to these incidents were excluded from the state trial.

---

[4] Recently, the defendant noticed his intent to call Dr. Deborah Mash to testify about the root causes, onset, and symptoms of cocaine-induced excited delirium. No other reports or information was provided. Defense counsel suggested that the defense is continuing conduct tests, and stated that Mash may offer the opinion that Scott was experiencing cocaine-induced excited delirium or cocaine-induced paranoia on the day of the incident. This evidence should also be excluded, and the government reserves the right to address this issue upon receipt of further information by counsel.

### D. Child Support

At the time of his death, Walter Scott owed approximately $18,000 in back child support payments. The defense repeatedly referenced the amount of child support Mr. Scott owed. See Testimony of Charlotte Jones, November 3, 2016, p. 72; Opening Statement, November 3, 2016, p. 40 ("You don't owe 19,000 [sic] in child support overnight."); Defense Closing Argument, November 30, 2016, p. 36 (noting that people with "good intent" "take care of their children"). As noted above, Mr. Scott had an active warrant for failure to appear at a family court hearing that dated from January 16, 2013. The defendant called one witness, Amanda Haselden, to testify about the family court system, and testify about the specifics of Walter Scott's family court record. See Testimony of Amanda Haselden, November 21, 2016.

### E. Taking Food from a Food Bank

The morning of his death, Walter Scott received food from a local food bank. During cross-examination of witnesses who knew Scott, the defense repeatedly implied that Scott was not eligible to receive the food, and had falsified his application form, thereby taking food from the "needy." See Testimony of Walter Scott Jr., November 3, 2016, p. 58; Testimony of Pierre Fulton, November 3, 2016, p. 130; Testimony of Gale Galliard, November 3, 2016, p. 84.

### F. Evidence Collected from Walter Scott's Phone

On February 2, 2017, defense counsel noticed its intent to call John Akerman as an expert in phone imaging and downloads. Counsel notified the government that Akerman will testify how he downloaded the contents of the Feidin Santana phone and the Walter Scott phone using then-existing Cellebrite technology and opine that he downloaded the true and accurate contents of both telephones.

Defense counsel has not provided any the contents that it uncovered from either the phone of either Walter Scott or Feidin Santana. State investigators were unable to download any information from Scott's phone. Though the government is not sure what contents the defense intends to introduce, it anticipates that some, if not all, of the contents, will also be excludable as improper character evidence, or under other Federal Rules. The government moves this Court to order the defense to disclose any items it intends to introduce at trial. The government reserves the right to further address this issue upon receipt of such information.

## II. Evidence Relating to Decedent Walter Scott's Character Is Inadmissible

### A. The Federal Rules Strictly Limit the Substance and Form of Character Evidence

#### 1. "Propensity" Evidence is Prohibited

The Federal Rules of Evidence impose substantial constraints on the type of character evidence that may be admitted at trial. Rule 404(a) states the general rule that "[e]vidence of a person's character is not admissible for the purpose of proving action in conformity therewith on a particular occasion . . ." As the Advisory Committee Notes to the Federal Rules of Evidence indicate, character evidence is generally not admissible because it tends to distract the jury. The Notes state:

> . . . [character evidence] is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on a particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.

Fed. R. Evid. 404 Advisory Committee Note.

The general prohibition on character evidence is particularly applicable to evidence of a victim's character, since "[l]earning of the victim's bad character could lead the jury to think the

victim merely 'got what he deserved' and to acquit for that reason," regardless of whether the law has been violated and the evidence establishes the defendant's guilt beyond a reasonable doubt. McCormick on Evidence § l93 at 572 (Cleary ed. l984).  The concerns described by the Advisory Note and McCormick are magnified in a case where the accused is a police officer.  Victims of abuse by the police – often people with a criminal record or a history of drug use – easily become targets for character attacks aimed at encouraging jurors to acquit only because the victim was a "bad person."

     A defendant may not, of course, encourage jurors to nullify.  See United States v. Rushin, 844 F.3d 933 (11th Cir. 2016), quoting United States v. Funches, 135 F.3d 1405, 1409 (11th Cir. 1998) ("The risk of jury nullification is accentuated by the fact that defendants were guards and the victims prisoners. We have previously explained that '[jury nullification] verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power.'")); United States v. Moylan, 417 F.2d 1002, 1006 (4th Cir. 1969) ("[B]y clearly stating to the jury that they may disregard the law, telling them that they may decide according to their prejudices or consciences . . . , we would indeed be negating the rule of law in favor of the rule of lawlessness. This should not be allowed.").

     The aforementioned evidence – especially the 1991 bludgeon-possession conviction; the NCIC designation; and the failure to pay child support – would be introduced solely to establish that Walter Scott had "lawless" or "violent" character.  The only purpose for introducing this information at trial is infer that Scott had a propensity for violence and lawlessness, or to imply that Scott "must have been breaking the law," and thus, that he deserved to be shot. This is precisely the type of propensity evidence that the Federal Rules seek to prohibit.  The prejudice of admitting such evidence – the risk that the jury would wrongly conclude the victim was

undeserving of the law's protection – greatly outweighs any limited probative value this evidence may have.

Furthermore, the defendant had no personal knowledge of any of aforementioned items, and thus, it could not have influenced his decisions to use force.

### 2. Specific Instances of Misconduct Are Not Permitted

If the Court determines that there is some pertinent and admissible character trait of Scott's that the defense may explore, the defendant's evidence must be limited to reputation or opinion testimony. Evidence of specific conduct demonstrating general "lawlessness," such as prior drug use, the military discharge, Scott's failure to pay child support, or any criminal history is inadmissible under the Federal Rules. Fed. R. Evid. 405(b). United States v. Piche, 981 F.2d 706 (4th Cir. 1992), *superseded by statute on other grounds;* United States v. Gregg, 451 F.3d 930, 934 (8th Cir. 2006). Rule 405(a) specifically states that, "[i]n all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a). Proving character through "specific acts" is explicitly limited because it "possess[es] the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." United States v. Gulley, 526 F.3d 809, 818 (5th Cir. 2008). Prior convictions, arrests, prior drug use, military discharge, and Scott's failure to pay child support, are all specific acts that reflect on character, and should be excluded pursuant to this rule. [4]

---

[4] Evidence of specific conduct is only admissible when character is an "essential element of a charge, claim, or defense." Fed. R. Evid. 405(b). This applies in rare cases, such as libel suits, where character is an actual element that the jury must find. "Lawless character," like "violent character," is not an element of defendant Slager's defense, in the sense that a jury could find Slager guilty of the crimes charged regardless of Scott's character for abiding the law. See United States v. Gravely, 840 F.2d 1156, 1164 (4th Cir. 1988) ("unless evidence of character is an essential element of a charge, claim or defense, proof of character is limited to general [] character…Evidence of specific [] acts is not admissible."); Gulley, 526 F.3d at 819 ("a

9

### 3. None of this Information was Known By the Defendant

Some of the aforementioned evidence might be admissible if the defendant had been aware of it at the time of the shooting. However, Defendant Slager had no prior interactions with Walter Scott, was unfamiliar with his reputation, and did not review NCIC designations during the traffic stop of Mr. Scott. Accordingly, the specific acts and character evidence are not admissible in this case. See United States v. Gregg, 451 F.3d 930, 935 (8th Cir. 2006) (evidence of victim's prior bad acts is only admissible to the extent a defendant was aware of them).

## B. The Court Should Exclude Impermissible Character Evidence

### 1. Decedent Victim's Criminal History Should be Excluded

The defendant should be precluded from introducing any evidence relating to the victim's prior criminal history, because such evidence is a specific acts of character, is irrelevant, and is unduly prejudicial. As Walter Scott will not be testifying at trial, rules that might have otherwise permited the introduction of specific acts (such as criminal convictions, or prior acts of dishonesty) are not applicable here. See Fed. R. Evid. 609(a) (criminal convictions are only permitted to impeach a testifying witness's character for truthfulness); Fed. R. Evid. 608(b) (permitting specific acts of dishonesty only to cross-examine a testifying witness); United States v. Johnson, 872 F.2d. 612, 619 (5th Cir. 1989) (a particular victim cannot be impeached until that victim's statement is before the jury); United States v. Stephens, 365 F.3d 967, 975 (11th Cir. 2004) (under the Federal Rules of Evidence, "the term 'witness' appears to refer solely to someone whose testimony is

---

self defense claim may be proven regardless of whether the victim has a violent or passive character."); see also United States v. Jackson, 549 F.3d 963, 976 (5th Cir. 2008); Gregg, 451 F.3d at 934; United States v. Kaiser, 57 F.3d 847, 854-855 (9th Cir. 1995); Lataille v. Ponte, 754 F.2d 33, 36-37 (1st Cir. 1985) (prior acts of violence inadmissible in excessive force case to show that plaintiff was aggressor). As this rule does not apply, any specific instances of lawlessness – including arrests or convictions – are thus inadmissible at trial.

actually offered as evidence at trial, and not merely someone with extensive knowledge of or involvement in the events at issue.").

Furthermore, even if Scott was available to testify, his 1991 conviction would be presumptively inadmissible as stale, as it occurred over ten years before this event, is not indicative of a lack of truthfulness, and was not a felony conviction. See Fed. R. Evid. 609(b). Accordingly, the defense should be precluded from any reference to Walter Scott's criminal history, including both convictions and arrests, during his upcoming trial.

### 2. Decedent Victim's Prior Drug Use Should be Excluded

The defendant should be precluded from introducing any evidence relating to the decedent victim's prior drug use. Such information should be excluded because it is irrelevant, improper character evidence, and unduly prejudicial. Because the decedent's prior drug use does not make any fact of consequence more or less probable, it is irrelevant, and should be excluded under Rule 401. If the Court were to determine that such evidence has some limited relevance, the Court should nonetheless exclude it under Rule 403, because the prejudicial impact of such improper character evidence greatly outweighs any probative value.

Furthermore, the defense should be precluded from introducing toxicology evidence that Walter Scott had cocaine in his system at the time of his death. As noted above, there is no credible evidence suggesting that Walter Scott was under the influence of cocaine at the time of his death. See Trial Court's Oral Ruling, November 22, 2016, p. 68. Accordingly, the fact that Scott may have used cocaine the day before he was killed is irrelevant, and only encourages nullification by implying that Scott was a "lawless" drug user. Therefore, this information should be excluded under Rule 403.

### 3. Walter Scott's NCIC Designation Should be Excluded

The Court should exclude Walter Scott's designation in NCIC, because it is improper character evidence, irrelevant, and unduly prejudicial.  First, the NCIC designation "armed and dangerous" is highly inflammatory, was unknown to the defendant, and is based on a misdemeanor conviction that is over 25 years old.  During the state trial, the defense repeatedly referenced the NCIC report, with the purpose of implying that the FBI believed Scott to be dangerous.  See Closing Argument, p. 43 ("The FBI put out a bulletin that Mr. Scott was armed and dangerous.")  The NCIC designations are unduly prejudicial, as the NCIC designation carries the imprimatur of the FBI, who maintains the NCIC database.  Furthermore, the NCIC information lacks probative value because the sole basis for its designation of dangerousness was a misdemeanor offense that occurred almost thirty years ago.  The only reason for this repeated reference to the NCIC record is to create a false impression of Walter Scott as being dangerous, and to imply that he was the aggressor in the matter before the jury.  The prejudice of admitting such evidence – the risk that the jury would wrongly conclude the victim was undeserving of the law's protection – greatly outweighs any limited probative value this evidence may have.  Accordingly, reference to the NCIC record should be excluded.

### 4. Evidence of Unpaid Child Support Should be Excluded

The fact that Walter Scott had unpaid child support is irrelevant to the issues in this trial, and would only be introduced to smear the victim's character.  During the state trial, the defense repeatedly referenced Scott's unpaid child support as a way to besmirch Scott's character.  See Defense Closing Argument, November 30, 2016, p. 36 (noting that people with "good intent" "take care of their children"); p. 37 (implying that Scott was "repeatedly irresponsible" and didn't "take care of [his] children"); Defense Opening Statement, November 3, 2016, p. 40 ("Apparently [Scott]

didn't use any of his income to pay his child support…You don't owe 19,000 in child support overnight."). The court should exclude reference to the existence and amount of unpaid child support.

### 5. Evidence Relating To the Food Bank Should Be Excluded

Walter Scott will not be a witness at trial, and therefore any evidence relating to his character for truthfulness is impermissible. See Fed. R. Evid. 609(a) (criminal convictions are only permitted to impeach a testifying witness's character for truthfulness). Furthermore, referencing any conduct at the food bank is a specific instance of past conduct that is specifically barred by the rules of evidence. See Fed. R. Evid. 608(b) (permitting specific acts of dishonesty only to cross-examine a testifying witness.) Accordingly, any reference to whether or not Mr. Scott was permitted to receive food from the food bank should be excluded, pursuant to Rules 401, 403, and 404.

### 6. The Court Should Order Disclosure of the Contents of The Phones of Scott and Santana

As noted above, defense has suggested that intends to introduce the contents of Walter Scott and Feidin Santana at trial. Defense counsel has not provided any the contents that it uncovered from either phone. Though the government is not sure what contents the defense intends to introduce, it anticipates that some, if not all, of the contents, will also be excludable as improper character evidence, or under other rules of evidence. The government moves this Court to order the defense to disclose any items it intends to introduce into trial. The government reserves the right to further address this issue upon receipt of such information.

### III. Conclusion

The Federal Rules of Evidence strictly limit the type of evidence which a defendant may use in attacking the victim or another witness at trial. As described above, the Court should

preclude the defendant from introducing or making reference to Walter Scott's prior criminal convictions, uncharged misconduct, or general character. The specific evidence outlined above is inadmissible because it does not comport with the Federal Rules of Evidence, which limit the types of permissible character evidence and the vehicles for its introduction.

WHEREFORE, for the reasons stated above, the United States requests that this Court exclude any impermissible other acts or general character evidence of the decedent victim.

Respectfully submitted,

BETH DRAKE
UNITED STATES ATTORNEY

By: *s/ Eric Klumb*
Eric Klumb (#01671)
Assistant United States Attorney
151 Meeting Street, Suite 200
Charleston, South Carolina 29401-2238
Telephone: 843-266-1678
Email: eklumb@usa.doj.gov

*s/ Jared Fishman*
JARED FISHMAN
Special Litigation Counsel
Civil Rights Division, Criminal Section
U.S. Department of Justice
601 D Street, NW, 5th Floor
Washington, DC 20530
Telephone: (202) 598-1877
Jared.Fishman2@usdoj.gov
Maryland Bar No. 04-1214-0250