UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL SLAGER | CASE NO.<br>2:16 - CR - 378<br><br>**DECLARATION OF ATTORNEY DONALD MCCUNE** |

I, Donald McCune, declare under penalty of perjury that the following is true and correct to the best of my knowledge and recollection.

1. I served as co-counsel for the defendant Michael Slager in the above-referenced matter.

2. Acting as counsel for Mr. Slager, I attended an ex-parte meeting in chambers with Judge David Norton, co-counsel Andy Savage, and Cheryl Savage, to discuss Criminal Justice Act funding matters and scheduling issues related to the then-pending state trial.

3. During the course of the meeting, Judge Norton remarked that he had followed the state case.

4. During the course of this meeting, while discussing these matters, Judge Norton expressed his opinion that "this is not a murder case."

5. Before Judge Norton made the above-referenced comment, my co-counsel and I had engaged in preliminary plea negotiations with the Government.

6. I informed Mr. Slager about the Judge's ex-parte remark and indicated to him that it was a positive sign for the disposition of the case.

7. As a result of the Judge's comment, I began to believe that any agreement containing a plea to a base offense level of voluntary manslaughter would be contrary to Mr. Slager's best interests, because Mr. Slager would be locked in to what I presumed would be the highest guideline range the Judge would administer given the facts and circumstances of the case.

8. At some point, the Government offered to enter a plea agreement that, *inter alia*, specified the base offense level as voluntary manslaughter.

9. Because I believed that voluntary manslaughter would be the upper limit of the offense, I reasoned that the better course would be to negotiate a time-certain sentence, or permit the parties to enter an "open" plea agreement wherein each side would argue for their respective positions, without recommending a joint position to the Judge.

10. On or about April 20, 2017, co-counsel and I received an e-mail from US Attorney Beth Drake, repeating an earlier Government offer of a plea to a base offense level of voluntary manslaughter – "Last offer still stands, and that is G/L range of 151-188, with your ability to argue for variances and departures. If you guys want to counter with something other than the involuntary guidelines, we will certainly consider."

11. I did not convey this offer to Mr. Slager. I am not aware of co-counsel conveying this offer to Mr. Slager.

12. At the time, the defense team was deeply involved in end-game plea negotiations with the Government. We believed that a plea to a base offense level of voluntary manslaughter would lock Mr. Slager into the highest sentencing range that was already contemplated by the Court.

13. Because of the above-stated considerations, we did not seriously consider the offer to plea to voluntary manslaughter and continued to engage the Government in further plea negotiations.

14. After much negotiation, we recommended that Mr. Slager enter an "open" plea, allowing the Government to advocate for their position that the base offense level was Second-degree murder, and the defense team to argue our position that the base offense level was involuntary manslaughter.

15. On May 2, 2017, Mr. Slager appeared before the Honorable David Norton in order to enter a guilty plea pursuant to a Plea Agreement that myself and co-counsel had negotiated with the Government on Mr. Slager's behalf, which co-counsel and I had recommended to Mr. Slager, and which Mr. Slager had reviewed and signed.

16. The Plea Agreement was non-binding on the court, in that it did not contain any Rule 11(c)(1)(C) language that "a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply."

17. The Plea Agreement further indicated that the Government would seek a cross-reference under the Guidelines to Second-degree Murder. (ECF 114 at 3).

18. The Plea Agreement specified that Mr. Slager, then released on bond, would be detained while awaiting sentencing.

19. The factual basis of the plea agreement admitted that Mr. Slager "willfully used deadly force though it was objectively unreasonable . . . ."

20. As we approached the sentencing date for Mr. Slager, the United States Probation Office completed a pre-sentence investigation report (PSR) that determined the base offense level in Mr. Slager's case was voluntary manslaughter.

21. This PSR reinforced to the defense team that Mr. Slager would face a ceiling of voluntary manslaughter, and that by arguing for departures and variances, we could reduce his exposure, perhaps even to a base offense level of involuntary manslaughter.

22. As a result, the defense team crafted a sentencing presentation strategy that was aimed toward mitigation rather than advocacy.

23. The defense team had a use of force expert testify at the state trial.

24. Among other reasons, one purpose of a use of force expert is to explain to a finder of fact why actions of a police officer were objectively reasonable under the circumstances.

25. Among other reasons, one purpose of a use of force expert is to explain to a finder of fact any mitigating factors underlying objectively unreasonable police behavior, such as training, background, and experience.

26. The defense team did not have a use of force expert testify at Mr. Slager's sentencing.

27. The mitigation strategy was intentionally pursued to streamline and focus the sentencing hearing.

28. I placed great weight on Judge Norton's observation in an ex-parte session and allowed it to influence our strategy.
29. I did not communicate the plea offer of a base offense level of voluntary manslaughter to Mr. Slager.
30. I did not fully explain to Mr. Slager that he could avoid exposure to a life sentence by accepting a plea to a base-offense level of voluntary manslaughter.
31. I planned and participated in a design for the sentencing hearing aimed at preserving a perceived status quo.

*s/ Donald McCune*
Donald McCune


August 12, 2020